[Cite as *State v. Wilson*, 2013-Ohio-4799.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 13AP-205 |
| | | (C.P.C. No. 12CR-09-4544) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jacob G. Wilson, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 31, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellant.

*Carpenter Lipps & Leland LLP, Kort Gatterdam*, and *Erik P. Henry*, for appellee.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} The State of Ohio ("the state"), plaintiff-appellant, appeals the judgment of the Franklin County Court of Common Pleas, in which the court dismissed the state's case against Jacob G. Wilson, defendant-appellee.

{¶ 2} In the early morning hours of August 28, 2012, John Slosser, a police officer for the city of Whitehall, was in his police cruiser looking for a gold-colored Chrysler 300 that he believed might be involved in drug trafficking, although the record does not reveal he was acting on any specific knowledge. Slosser drove out of the Whitehall city limits and entered the jurisdiction of the city of Columbus. Upon driving through several streets in Columbus, Slosser observed a vehicle that he thought might fit the description of the

vehicle for which he was looking. Slosser turned his cruiser around and began to follow the vehicle. At some point, the vehicle turned off its headlights and began driving faster. Slosser turned on his overhead lights and siren, but the vehicle proceeded to drive through a red traffic light and three stop signs before striking a house. All of these events took place in Columbus. Slosser and another Whitehall police officer arrested the driver, Wilson. Columbus police officers arrived at the scene and completed a crash report, and the Whitehall officers filed charges against Wilson.

{¶ 3} On September 6, 2012, Wilson was indicted on one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, which is a third-degree felony. On December 5, 2012, Wilson filed a motion to dismiss the indictment or, in the alternative, to suppress evidence. Wilson argued that Slosser violated the extraterritorial arrest provisions in R.C. 2935.03 by arresting Wilson in Columbus. The trial court held a hearing on March 4, 2013. On March 5, 2013, the trial court issued a decision and entry granting Wilson's motion to dismiss. The state appeals the judgment, asserting the following assignment of error:

> THE TRIAL COURT ERRED BY DISMISSING THE INDICTMENT BASED ON ITS ERROENOUS APPLICATION OF THE EXCLUSIONARY RULE FOR AN ALLEGED VIOLATION OF R.C. 2935.03.

{¶ 4} The state argues in its first assignment of error that the trial court erred when it dismissed the indictment based upon the exclusionary rule for a violation of R.C. 2935.03. We review a trial court's legal conclusions in ruling on a pretrial motion to dismiss criminal charges de novo. *State v. Saxon*, 9th Dist. No. 09CA009560, 2009-Ohio-6905, ¶ 5, citing *State v. Davis*, 9th Dist. No. 08CA009412, 2008-Ohio-6741, ¶ 22 (applying a de novo standard to the trial court's legal conclusions on a motion to dismiss); *State v. Henley*, 8th Dist. No. 86591, 2006-Ohio-2728, ¶ 7 (court's reviewing a decision on a motion to dismiss for pre-indictment delay accord deference to the lower court's findings of fact but engage in a de novo review of the lower court's application of those facts to the law).

{¶ 5} The state's first contention is that a violation of R.C. 2935.03 does not trigger the exclusionary rule. R.C. 2935.03(A)(1) provides, in pertinent part:

> A * * * municipal police officer * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * or areas of a municipal corporation * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation.

Therefore, the statute, by negative implication, prohibits an officer from arresting and detaining without a warrant any person outside the officer's territorial jurisdiction. *See Cincinnati v. Alexander*, 54 Ohio St.2d 248 (1978), syllabus.

{¶ 6} The issue before us concerns the effect of an officer's violation of R.C. 2935.03(A)(1) on evidence seized pursuant to such violation and whether the exclusionary rule applies. In a Fourth Amendment context, the judicially created exclusionary rule, created to deter illegal police conduct, provides that evidence obtained through unconstitutional searches and seizures is subject to exclusion and prospectively inadmissible. *State v. Young*, 146 Ohio App.3d 245, 257 (11th Dist.2001), citing *United States v. Leon*, 468 U.S. 897, 916 (1984), and *Mapp v. Ohio*, 367 U.S. 643 (1961). However, the exclusionary rule is applicable only to constitutional violations. In *State v. Myers*, 26 Ohio St.2d 190 (1971), the Supreme Court of Ohio explained the exclusionary rule would not be an available remedy for those statutory violations that fall short of constitutional violations, unless the legislature expressly mandated the application of the exclusionary rule in the statute. *Id.* at 196.

{¶ 7} With this background, we now examine three cases that have particular application to the present case. In *State v. Weideman*, 94 Ohio St.3d 501 (2002), the Supreme Court of Ohio found that, when an officer violates R.C. 2935.03(A)(1), "the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." (Emphasis sic.) *Id.* at syllabus. The court found that it has "consistently considered the totality of the circumstances in determining whether a violation of a statutory standard is unreasonable *per se* thus requiring suppression of evidence." (Emphasis sic.) *Id.* at 504. This "balancing test" weighs the interests of the government in making the stop and the rights of the affected driver. *Id.* at 506.

{¶ 8} However, in *Virginia v. Moore*, 553 U.S. 164 (2008), the United States Supreme Court unequivocally stated that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Id.* at 171. Accordingly, the court found that state courts were not required to employ the exclusionary rule to suppress evidence obtained in contravention of a state statute. *Id.* at 174-75.

{¶ 9} In *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, the Supreme Court of Ohio acknowledged that, pursuant to *Weideman*, "a court could find that an extraterritorial stop is unreasonable based on the unique facts and circumstances of a particular case." *Id.* at ¶ 14. The court then found that the United State Supreme Court in *Moore* "removed any room for finding that a violation of a state statute, such as R.C. 2935.03, in and of itself, could give rise to a Fourth Amendment violation and result in the suppression of evidence." *Id.* at ¶ 15. Thus, " 'when an officer has probable cause * * * the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.' " *Id.* at ¶ 17, quoting *Moore* at 171. Consistent with *Moore*, the Supreme Court of Ohio concluded that "[a] law-enforcement officer who personally observes a traffic violation while outside the officer's statutory territorial jurisdiction has probable cause to make a traffic stop; the stop is not unreasonable under the Fourth Amendment to the United States Constitution. (*State v. Weideman* (2002), 94 Ohio St.3d 501, 764 N.E.2d 997, followed.)" *Jones* at syllabus. Furthermore, the court also rejected "a balancing test for determining when to impose a suitable sanction for a law-enforcement officer's violation of the territorial limits on arrest powers." *Id.* at ¶ 22

{¶ 10} In the present case, Wilson contends that the balancing test in *Weideman* is still the proper standard, and *Jones* did not defeat its precedential value. Wilson argues that the decision in *Jones* did not indicate that the court was overruling *Weideman* and, in fact, indicated it was following *Weideman* in its syllabus. Therefore, Wilson argues *Weideman* still has precedential value and remains the proper analysis when an officer has violated R.C. 2935.03.

{¶ 11} We disagree. As the state points out, the portion of *Weideman* that the court was following in *Jones* was that a violation of R.C. 2935.03 does not render an arrest unreasonable per se and does not require suppression. The court in *Jones* was not

endorsing the balancing test in *Weideman*. The court made such clear when it stated that Justice Cook's concurring opinion in *Weideman* "was prescient in noting that the *Weideman* majority's Fourth Amendment balancing analysis was unnecessary when the stop is based upon probable cause." *Jones* at fn. 1. Thus, the balancing test is not the proper analysis; instead, it must be determined whether probable cause existed. *See State v. Dillehay*, 3d Dist. No. 17-12-07, 2013-Ohio-327, ¶ 35 (rejecting the application of a balancing test of governmental interests and individual rights to find that the balance supports the granting of suppression, as *Jones* explicitly rejects the application of a balancing test when remedying a violation of R.C. 2935.03). Therefore, we agree with the state's contention that a violation of R.C. 2935.03 does not trigger the exclusionary rule, and the trial court was guided by the pronouncements of the Supreme Court of Ohio in *Jones*.

{¶ 12} Accordingly, pursuant to *Jones*, the issue before the trial court was whether Slosser, who personally observed Wilson's actions while outside his territorial jurisdiction delineated in R.C. 2935.03(A)(1), had probable cause to make the traffic stop. However, during the hearing on Wilson's motion to dismiss, neither the trial court nor the parties addressed whether Slosser had probable cause. As the trial court has not addressed this issue, we will not address it for the first time on appeal and remand the matter for the trial court to address probable cause in the first instance. *See Young v. Univ. of Akron*, 10th Dist. No. 06AP-1022, 2007-Ohio-4663, ¶ 22 (it is a fundamental principle of appellate review that a court does not review, for the first time on appeal, an issue not addressed or decided below). Given our remand order, the state's remaining arguments are moot at this juncture. Therefore, the state's assignment of error is sustained.

{¶ 13} Accordingly, the state's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for a determination on probable cause.

*Judgment reversed and cause remanded.*

KLATT, P.J., and CONNOR, J., concur.

_____